Good morning, Your Honors. May it please this Honorable Court, Robert Flummerfelt for Appellant. The issue presented for review this morning is whether Appellant's counsel satisfied the good-faith conferral requirement of Federal Rule of Civil Procedure 37 prior to bringing forth a motion to compel discovery responses from Appellee's counsel. Our answer is an equivocal yes. Prior to filing the motion, there were numerous communications, orally and written. There was two-way communication between Appellant's counsel and Appellee's counsel. Six letters delineated in the record at Bates No. 1-87 for a motion to compel. You will see from June 1, 2006 through all the way to September 11, the response from both sides. Six from Appellant. How did it ever get to this point? I mean, I know Mr. Cristalli is not here, you're here to carry the weight, carry the water here, but how did it ever get to this point in a relatively modest discovery dispute? It got to this point, Your Honor, because after numerous months of communicating, we had hit a wall. Mr. Cristalli hit a wall. It didn't hit a wall. I mean, why not ask the judge to review in camera whatever documents the defense had, to see whether or not the privilege was well taken, whether or not the information was relevant or likely to lead to the discovery. I mean, it was just like I had a mentor judge who said, anybody who's in a discovery dispute like this ought to be forced to wear short pants, knee socks and a beanie, because that's the way it looks to the outside world. I understand. And the reason for that it got this far, Your Honor, is because Appellee's counsel said the only way you're going to get this information is with a court order, asserted that the information is irrelevant, only gave a privilege law, also said that the matter is privileged. So that was the wall. The wall was created by Appellee's counsel. Let me ask you a question, another question. It's obvious from the record, nobody sat face to face with one another. Well, isn't that true? It's not true. You can talk about telephone conversations. You can talk about sending letters one to another. But there's nothing in this record that says you sat down face to face with the other side and had a conference in the same room talking to each other. There was face-to-face communication between Mr. Crostelli and Mr. Angulo. The communication occurred. Where is it in the record? It's not in the motion to compel. However, it's in the record before Magistrate Johnston from the July 31st, 2007 hearing. Mr. Crostelli explains at length the communications. When you mean they had some kind of conversation about it after a summary judgment proceeding out in the hall or something? They had a deposition, Your Honor, and also — In a deposition. During a time for deposition. Also after a motion for summary judgment had been denied. And the response from Mr. Angulo was you will have to get an order from the court. And — You know, the thing that kind of is amazing to me, I somehow didn't get out here with my bench book, so I can't remember the name of the case. But there is a case in the district written by the magistrate — Right. — which just lays out the procedure and which admittedly was unknown to counsel. That seems to me to just be the beginning and end of it. And we believe we have complied with Shufflemaster. I think that's the decision you're referring to. I guess the next question I'd like to ask is you say some idea that this is de novo review. I guess I'm having a tough time finding any case that says that this is de novo review. Here we have — I got the rule right in front of me. Doesn't say anything about this is something that I have de novo review on. And I have never found a case — in fact, U.S. v. Cimito Greenland Fire Insurance, pretty straightforward, this is abuse of discretion. Where did you get the idea this is de novo review? I apologize for that, Your Honor. Abuse of discretion appears to be the proper level of review for this. I apologize for that. Okay, so if we're on an abuse of discretion and we got the standards set out in the rule 37A1, and then we had another case that the magistrate full well laid out, and now we got a judge who's right on spot making this determination, why is this an abuse? Well, because the Federal Rule 37A1 is clear. The language is shuffle master. This becomes an argument where the substance that occurred, the communication between Mr. Cristoli and Mr. Angulo complied with letter in spirit of 37A1, also a local rule. All of that was required. The abuse of discretion is because the facts clearly indicate that every effort was made by Mr. Cristoli to effectuate resolution without bringing this to a court order. And in that regard, we believe that the judge abused discretion because it was wrong. And in looking at both the letter of Federal Civil Procedure 37A1, local rule 27267B, and also with shuffle master, everything that Mr. Cristoli did was satisfied by all requirements. Well, except shuffle master makes it very clear that it's supposed to be personal, in person, face-to-face, specific sort of line-item discussion, and that the certification that that's been done has to be made. And, you know, you could never do that. The certification, as far as the actual affidavit, does not have the specifics. But also in shuffle master, shuffle master says that the motion is to give the specifics for all the attempts at resolution without bringing forth a motion to compel a motion to compel, and in that motion, there are numerous communications. As I said, there are six letters which are specific, two, three, four pages in length from Mr. Cristoli. Two responses from Mr. Angulo. In addition, there are telephonic communications that the parties are having. There's face-to-face at a deposition speaking about with the, for Officer Horn back in May of 2006. And also after that, summary judgment motion, specifically having lengthy discussion between Mr. Cristoli and Mr. Angulo. That is every effort to meet, confer, discuss the underlying discovery dispute. And so if you make, so if I don't agree with you on that, and we move to fees, again we've got an abuse of discretion, don't we? Yes, Your Honor. And the district judge awarded attorneys fees. He considered the discovery certificate. He considered the performance requirement. He considered the reasonableness of the fees. He articulated how he was to calculate it and reduced it by more than a thousand bucks. And you're saying that was an abuse? We're saying that the original decision to even award attorneys fees was the abuse because based on all the actions, the facts and the record shows a compliance with Federal Civil Procedure 30. So what you're really arguing, and I don't mean to cut you off, what you're really arguing is because he made a bad decision on the first one, it automatically goes to the fees. You're not separating out those two decisions? No, Your Honor, because that's the basis for why we're here today and why we filed with the Ninth Circuit. The underlying question is whether it's a question of form or substance. Substantially, without a doubt, every attempt was made to forego a motion to compel. Numerous communication. It wasn't something that was done quickly or without thought. It was over the period of four or five months. Discovery was coming to an end. There was nothing else that could be done. Mr. Anglue put the wall forward, said, lacking a court order, you are not going to get this information. He knew very well what information Mr. Cristoli was asking for, what discovery information specifically. Detailed letters in the record as well. There was no other way other than you want if you want to save any time for rebuttal, maybe you better wind it up. You got 15 seconds. All right. I said my piece. Thank you, Your Honors. Mr. Anglue, what would have been accomplished by a sit down on the issue that was dividing you and Mr. Cristoli? Well, a number of things might have been accomplished by it. One, the question was whether or not, once we cited to him specific pages in the deposition where those interrogations had been answered, whether there was additional information that he thought wasn't going to be contained within that. There were questions about how he felt the shooting of an animal was relevant to the shooting of an unarmed man several years later, or whether giving somebody a ticket for battery who complained about it, how that had any relevance to claim that Metro should somehow have known that he was engaged in excessive force. The concern, as you can perhaps see from the letters, is that as I say to them, look, we've given you this information. You have a privilege log. You know what these events are because we've identified what they were in the course of the depositions or in discovery responses. Tell me how it possibly has any bearing on relevant issues in the case. The answer we received back was simply, we're going to file a motion to compel. This is our letter of good faith effort to meet and confer. There was no personal communication. There was no communication in the depositions. And the argument that somehow after the ---- Conversation at the depositions? Not about these discovery issues. They weren't even responded to until after the depositions were done. That's they'd sent, they issued the discovery, and then the depositions were taken before the time was due to answer the discovery. So there was no discussion about that. The argument that Mr. Counsel raises regarding the argument, the summary judgment hearing, the summary judgment hearing, as the Court can tell from the docket record, was held in December of 2006, after the motion to compel had been filed. And frankly, Your Honor, the only conversation we had then was that I would see them in this circuit because we were going to go up on qualified immunity. It was my ---- I didn't want to talk about anything else really at that point in time. I was a little unhappy with the decision. But be that as it may, there simply wasn't any such discussion. And I think as you see what Judge Johnson does in that colloquy between himself and Counsel, where he says to him, well, tell me where it is. And he says to him at one point, well, Judge, it wasn't going to do any good because Mr. Engle is intractable, essentially. And so we ---- why would I bother trying to meet with him on it? It was a futility argument. Right. It's this exercise of futility. And yet, as the judge pointed out, you know, we had gone back, or I should say I had gone back on behalf of my clients, gone through the depositions, as I asked them to do, which they felt they didn't have any obligation to do, so I took the time to go back to the depositions because I actually went out and did additional research and felt that perhaps simply saying, hey, see our answers in the depositions was inappropriate. I felt that I probably needed to be more specific and identify that for them. I went through and took the time to do that. We supplemented some of our answers because I realized I was wrong in my objection, that in fact, having looked at it myself, there were two that had not ---- there were three that had not been answered between the various defendants. And so we supplemented those responses. It's, I think, telling at the very least that we raised the issue on behalf of the clients. The issue was raised in the opposition to the motion to compel that the certification, there was no personal meet and confer. The reply says nothing about that. It says, no, no, we had numerous interpersonal communications. Nothing about that. Mr. Lichtenstein comes. He actually wrote one of the letters. It's in the record. He shows up to the judge. He doesn't say to the judge, judge, look, I don't know everything about this, but I know that Mr. Angul and I had personal communications. He doesn't say it. He just says I'm ---- I have nothing ---- I don't know anything about this case. And then when they ---- so the judge reschedules it. For the hearing designed to hear the motion to compel, at issue is whether there are personal communications. It's the primary issue raised. The lawyer that you would assume is prepared to go and hear that argument on behalf of the client comes in and says, judge, there are no interpersonal communications. There simply were none. We find none in the record. I know of none. She could have asked Mr. Castelli if, in fact, they were there. First time we hear it is when the judge says, well, this is ridiculous. I'm going to award attorney's fees. And in all candor, the Shufflemaster decision, which has been the guiding light, certainly in that judge's courtroom because this is his published decision for over 10 or almost 10 years at this point, very clearly lays out what's required. Mr. Castelli admitted he had no idea what those standards were. And his argument was basically this exercise of futility. It's not the law. And the decision was appropriate, Your Honor. And unless there are specific questions, I'll sit down. I don't think so. Thank you, Your Honor. Anything more? I just want to add quickly, because I only have 13 seconds, that specifically there was communication that's not as clearly in the record from July 31, 2007 from the hearing for Magistrate Johnston. Let me ask you this. If we affirm on the decision of the magistrate judge, both in terms of the merits and the attorney fee, I guess we're just here on the attorney fees, does that of necessity mean that the appeal was not taken in good faith? No, it absolutely was, 100 percent. There was nothing else that our office could have done at that time to get these discovery responses. Every effort was made between Mr. Castelli and Mr. Angulo. It wasn't a futility. If you look at the letters, the letters specifically from Mr. Angulo say, we're not going to give you this, and then there's an open-ended at the end, let's talk about. Well, actions speak louder than words. We never received them. We never got them. That was the only mechanism to bring this forward and get that information. Thank you. Thank you, Your Honor. Thank you, counsel. The matter just argued will be submitted next year.
judges: Leighton, Rymer, Smith N. R.